Gamma Law, P.C.
Duy Thai, SBN 157345
Email: dthai@gammalaw.com
Kenneth J. MacArthur, SBN 175906
Email: kmacarthur@gammalaw.com
One Sansome Street, Suite 3500
San Francisco, California 94104
Tel.: 415.296.9927
Fax: 415.901.0512

Attorneys for Applicants Aniplex, Inc.,
and Toho Co., Ltd.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re *Ex Parte* Application of<br><br>Aniplex, Inc., a Japanese corporation, and Toho Co., Ltd., a Japanese corporation,<br><br>Applicants. | Case No.:<br><br>***EX PARTE* APPLICATION OF ANIPLEX INC. AND TOHO CO., LTD. FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 AUTHORIZING DISCOVERY FOR USE IN FOREIGN PROCEEDINGS;**<br><br>**AND**<br><br>**SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES** |

## *EX PARTE* APPLICATION

Applicants Aniplex Inc. and Toho Co., Ltd. ("Applicants") hereby make this *ex parte* application for an order pursuant to 28 U.S.C. § 1782 authorizing discovery for use in foreign proceedings ("Application"). This Application seeks limited discovery from X Corp., and is supported by the supporting memorandum below and the Declarations of Hiroyuki Nakajima, Yuma Takahashi and Koji Higashi filed concurrently herewith. The proposed subpoena to be served is attached to this Application as **Exhibit A.**

## SUPPORTING MEMORANDUM

### I.

### BACKGROUND

Applicants are Japanese corporations engaged in the business, among others, of producing and releasing "anime" TV series (i.e., various animated, Japanese-language television series). Declaration of Hiroyuki Nakajima ("Nakajima Decl.") ¶ 1; Declaration of Yuma Takahashi ("Takahashi Decl.") ¶ 4; Declaration of Koji Higashi ("Higashi Decl.") ¶ 4. The intended initial audiences for these anime TV series are television viewers in Japan, where such anime TV series are popular. Takahashi Decl. ¶ 4; Higashi Decl. ¶ 4.

X. Corp. owns and operates "X" (formerly known as Twitter), and its principal office is located in San Francisco. Nakajima Decl. ¶ 8 & Ex. 1 thereto.

Applicants have each been the victim of copyright infringement under Japanese law as to their respective anime TV series, via posts made by anonymous twitter users on X in which leaked images from unreleased episodes (or unreleased versions of episodes) of the anime TV series were posted without authorization. Takahashi Decl. ¶ 6; Higashi Decl. ¶ 6.

The background to these infringements is as follows. Typically, each episode of the subject anime TV series was released in the following fashion:

   a. An episode of an anime TV series has a "release date." The episode, and the images in the episode, are not publicly available until the release of the episode on the release date.

   b. On an episode's release date, the episode is first released nationwide in Japan on broadcast

television. The official animation broadcast release is made at a set time, agreed to in advance by the broadcast television stations, and identified in advance to their viewers.

c. After the broadcast release, the episode is released nationwide in Japan on streaming services (e.g., Netflix, Amazon Prime Video, and Hulu). The official animation streaming release is made at a set time (usually midnight (12:00 a.m.) on the next day), agreed to in advance by the streaming services, and identified in advance to their viewers.

d. In order that the broadcast TV stations, and the streaming services, can release the episode at the applicable release date and time, each episode is made available to the broadcast TV stations and streaming services in advance of the release. However, the broadcast TV stations, and the streaming services, do not have authorization from Applicants to release an episode, or frames from an episode, to the public prior to the applicable official release date and time.

Takahashi Decl. ¶ 7; Higashi Decl. ¶ 7.

Applicants were able to identify each of the subject infringements in one of three ways:

a. First, and most simply, where an image from an episode is posted on X by a twitter user prior to the episode's release date, the posting is unauthorized and an infringement.

b. Second, sometimes an episode is first provided to broadcast TV stations and streaming services with deliberately erroneous information in the episode's credits. Then, prior to the release date and time, another version of the episode, with correct credits, is provided to the broadcast TV stations and streaming services to be used for the release. In such circumstances, the version with the deliberately erroneous credits was never authorized for release, and any image posted on X of those erroneous credits is unauthorized and an infringement.

c. Third, some of the infringement was identified by the appearance of "watermarks" in a posted image of an episode. A "watermark" in an anime image typically appears as a circle in a set of known locations within the image. A watermark typically is barely perceptible, or not perceptible, in an image, but its appearance in the image can be confirmed by

| | |
|---|---|
|1| brightening the image. Where infringement was detected here by a watermark, that was |
|2| possible because: (i) the version of the episodes provided to broadcast TV stations did not |
|3| have watermarks; (ii) the version of the episodes provided to streaming services did have |
|4| watermarks; and (iii) the infringing posts were posted before the streaming release time and |
|5| date. In other words. the posted images came from a streaming version of the episode, not |
|6| the broadcast version, at a time where the streaming version was not authorized for release, |
|7| and the post of the image on X was unauthorized and an infringement. |

8  Takahashi Decl. ¶ 8; Higashi Decl. ¶ 8.

9  Each of the subject posts, along with the basis for knowing each was an infringement, is
10 detailed in the Declarations of Yuma Takahashi and Koji Higashi. Takahashi Decl. ¶¶ 9-22 and Exhs.
11 1-25; Higashi Decl. ¶¶ 8-17 and Exhs. 1-8. The subject posts were made on X by twelve anonymous
12 individuals ("Anonymous Individuals"). Takahashi Decl. ¶¶ 9-22 and Exhs. 4, 5, 7, 9, 11, 13, 14, 16,
13 18, 20, 23 & 25; Higashi Decl. ¶¶ 8-17 and Exhs. 4, 5 & 8.

14 Applicants intend to file a civil lawsuit in Japan against the Anonymous Individuals pursuant
15 to: (1) Article 709 of the Civil Code of Japan (Compensation for Damage in Tort), seeking damages
16 for copyright infringement; (2) Article 112(1) of the Copyright Act of Japan, seeking injunctive relief;
17 (3) Article 3(1) of the Unfair Competition Prevention Act, seeking injunctive relief; and (4) Article 4
18 of the Unfair Competition Prevention Act, seeking damages. Nakajima Decl. ¶¶ 5, 9 & 17.

19 Applicants will be able to make out a prima facie civil case against the Anonymous Individuals
20 because the conduct of the Anonymous Individuals violated Article 709 of the Civil Code, is a basis
21 for injunctive relief under Article 112(1) of the Copyright Act, and is a basis for damages and
22 injunctive relief under the Unfair Competition Prevention Act. Nakajima Decl. ¶ 10-14. Therefore, the
23 civil lawsuit that will be filed upon discovering the true identities of the Anonymous Individuals will
24 withstand a motion to dismiss in Japan. Nakajima Decl. ¶ 14.

25 However, in order to file a civil lawsuit in Japan, the true identity of a defendant is necessary,
26 because Japanese law does not allow for lawsuits to be filed against anonymous persons. Nakajima
27 Decl. ¶ 16. As such, the Applicants are unable to file the civil lawsuits because the true identity of the
28

Anonymous Individuals are unknown. *Id.*

Applicants therefore seek Court authorization to conduct limited discovery by serving subpoenas upon X Corp., which is located in this district, to discover personal identifying information ("PII") that can be used to identify the true identities of the Anonymous Individuals. Nakajima Decl. ¶¶ 8 & 17, and Exh. 1.

## II.
## *EX PARTE* CONSIDERATION OF SECTION 1782 APPLICATION IS PROPER

Applications made under 28 U.S.C. § 1782 are typically considered on an *ex parte* basis, because "parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it." *IPCom GmbH & Co, KG v. Apple, Inc.*, 61 F. Supp. 3d 919, 922 (N.D. Cal. 2014). Consequently, orders granting Section 1782 applications typically only provide that discovery is "authorized," and thus the opposing party may still raise objections and exercise its due process rights by challenging the discovery after it is issued via a motion to quash, which mitigates concerns regarding any unfairness of granting the application *ex parte*. *In re Ex Parte Application Varian Med. Sys. Int'l AG*, No. 16-mc-80048-MEJ, 2016 WL 1161568, at *2 (N.D. Cal. Mar. 24, 2016).

## III.
## LEGAL STANDARD

Section 1782 permits authorization of discovery where three requirements are satisfied: (1) the person from whom the discovery is sought "resides or is found" in the district of the court where the application is made; (2) the discovery is "for use in a proceeding in a foreign or international tribunal . . . ."; and (3) the application is made by a foreign or international tribunal or "any interested person." *Khrapunov v. Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019); 28 U.S.C. § 1782(a).

The Supreme Court in *Intel* identified four discretionary factors to be considered by a court when exercising its discretion to authorize discovery pursuant to Section 1782: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign

government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the request is unduly intrusive or burdensome. *In re* Premises Located *at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 563 (9th Cir. 2011) (cleaned up) (citing *Intel*, 542 U.S. at 264-65).

The party seeking discovery need not establish that the information sought would be discoverable under the governing law in the foreign proceeding or that United States law would allow discovery in an analogous proceeding here. See *Intel*, 542 U.S. at 247, 261-63. "Section 1782 is a provision for assistance to tribunals abroad. It does not direct United States courts to engage in comparative analysis to determine whether analogous proceedings exist" in the United States. *Id.* at 244. Further, production of documents or testimony may be ordered for use in a foreign legal proceeding under Section 1782 as long as the disclosure would not violate a legal privilege. *Id*. at 249.

A district court's discretion is guided by the twin aims of Section 1782: providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to U.S. courts. *In re Ex Parte Application of Med. Inc. Ass'n Smile Create*, No. 19-mc-80230-VKD, 2019 WL 4933582, at *2 (N.D. Cal. Oct. 7, 2019) (citing *Schmitz v. Bernstein Liebhard & Lifshitz LLP*, 376 F.3d 79, 84 (2d Cir. 2004)).

## IV.

## ARGUMENT

### 1. This Application Satisfies the Three Requirements of Section 1782

#### A. X Corp. "resides or is found" in this district

The first requirement is met. X Corp. "resides or is found" in this district, because its principal office is located in San Francisco, California, in this district. Nakajima Decl. ¶ 8 & Ex. 1 thereto. *See In re Todo*, No. 5:22-MC-80248-EJD, 2022 WL 4775893, at *2 (N.D. Cal. Sept. 30, 2022); *In re Super Vitaminas, S.A.*, 2017 WL 5571037, at *2 (N.D. Cal. Nov. 20, 2017) (finding that an office within the district satisfies the requirement); *In re TPK Touch Sols. (Xiamen) Inc.*, 2016 WL 6804600, at *2 (N.D. Cal. Nov. 17, 2016) (finding subpoenaed party was "found" within the district because it

1  maintained an in-district office). Courts have also concluded that companies are found in a district
2  where 'they conduct systematic and continuous local activities in this district.' *In re Qualcomm Inc.*,
3  162 F. Supp. 3d 1029, 1036–38 (N.D. Cal. 2016)").

    B.  <u>The civil action in Japan is within reasonable contemplation</u>

To meet the second requirement, a formal proceeding in the foreign jurisdiction need not be currently pending, or even imminent. *Intel*, 542 U.S. at 259. All that is required by the statute is that a "future proceeding is 'within reasonable contemplation.'" *Id.* (holding that discovery was proper under Section 1782 even though the Applicants's complaint was still only in the investigative stage).

The second requirement is met, because the discovery sought is for purposes of a civil lawsuit to be filed in Japan. Nakajima Decl. ¶¶ 5, 9 & 17. Civil lawsuits in Japan are "within reasonable contemplation" because Applicants intends to file the civil lawsuit once the true identity of the Anonymous Individuals is ascertained. *Id.*.

    C.  <u>Each Applicant, as a putative plaintiff, is an interested person</u>

The third and final requirement is met, because each Applicant, as a putative plaintiff, is an interested person. *Id.*; see *Intel*, 542 U.S. at 256 (litigants are most common example of interested person).

**2. The Supreme Court's *Intel* Factors Strongly Favor Granting the Application**

The four, discretionary Intel factors weigh heavily in favor granting Applicants's request.

    A.  <u>X Corp., from whom discovery is sought, is not a party in the foreign proceedings</u>

The first *Intel* factor is whether "the person from whom discovery is sought is a participant in the foreign proceeding." *Intel*, 542 U.S. at 264. Under this factor, "the key issue is whether the material is obtainable through the foreign proceeding." *In re Ex Parte Application Varian Med. Sys. Int'l AG*, No. 16-mc-80048-MEJ, 2016 WL 1161568, at *3 (N.D. Cal. Mar. 24, 2016). This is so, because "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 264. Here, X Corp. will be a nonparticipant in the civil actions in Japan. Nakajima Decl. ¶ 18. Furthermore, it is located in this district. *Id.* ¶ 8 & Ex. 1. For the foregoing

reasons, it is outside Japan's jurisdictional reach, and hence, evidence available in the United States from them is unobtainable by Applicants absent Section 1782(a) aid. *Id.* ¶ 24; see *Intel*, 542 U.S. at 264. Therefore, this first factor weighs in favor of authorizing discovery.

### B. Japanese courts are receptive to U.S. federal court judicial assistance

The second *Intel* factor requires the Court to consider "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. "This factor focuses on whether the foreign tribunal is willing to consider the information sought." *In re Ex Parte Application Varian Med. Sys. Int'l AG*, 2016 WL 1161568, at *4. Under this factor, "courts look for authoritative proof that a foreign tribunal would reject evidence obtained with the aid of § 1782." *In re Application of Joint Stock Co. Raiffeinsenbank*, No. 16-mc-80203-MEJ, 2016 WL 6474224, at *5 (N.D. Cal. Nov. 2, 2016). In the absence of authoritative proof that a foreign tribunal would reject evidence obtained with the aid of Section 1782, courts tend to err on the side of permitting discovery. *See Palantir Techs., Inc. v. Abramowitz*, 415 F. Supp. 3d 907, 915 (N.D. Cal. 2019) (citation omitted). In the absence of evidence that a foreign court would object to the discovery of the information sought in the subpoena, or that a foreign court objects more generally to the judicial assistance of U.S. federal courts, this factor weighs in favor of authorizing discovery. See, e.g., *In re Med. Corp. H&S*, No. 19-mc-80058-VKD, 2019 WL 1230440, at *3 (N.D. Cal. Mar. 15, 2019).

There are no known restrictions imposed by or any policies under the laws of Japan limiting U.S. federal court judicial assistance, and courts of Japan are receptive to assistance in discovery by U.S. federal courts, including for discovery of PII of individuals acting anonymously online. Nakajima Decl. ¶¶ 19-20. Furthermore, this Court in the past has granted Section 1782 discovery for use in proceedings in Japan. See, e.g., *In re Med. Corp. H&S*, 2019 WL 1230440; *In re Med.Corp. Seishinkai*, No. 21-mc-80160-SVK, 2021 WL 3514072 (N.D. Cal. Aug. 10, 2021).

Because there is evidence showing that courts of Japan are receptive to U.S. federal court judicial assistance, and there is nothing to show that courts of Japan would object to discovery of the information sought by this Application, this factor weighs in favor of authorizing discovery.

### C. This Is Not an Attempt to Circumvent Foreign Proof-Gathering Restrictions

The third *Intel* factor is whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 264-65. Courts have found that this factor weighs in favor of discovery where there is "nothing to suggest that [the Applicants] is attempting to circumvent foreign proof-gathering restrictions." *In re Google Inc.*, No. 14-mc-80333-DMR, 2014 WL 7146994, at *3 (N.D. Cal. Dec. 15, 2014); *see also In re Eurasian Natural Resources Corp.*, No. 18-mc-80041-LB, 2018 WL 1557167, at *3 (N.D. Cal. Mar. 30, 2018) (third *Intel* factor weighs in favor of discovery where there is "no evidence" of an attempt to circumvent foreign proof gathering restrictions or policies). Applicants is not attempting to circumvent any foreign proof-gathering restrictions or other policies of Japan or the United States. Nakajima Decl. ¶ 21. Nothing suggests that Applicants is attempting to circumvent foreign proof-gathering restrictions or applicable polices, so this factor weighs in favor of authorizing discovery.

### D. The discovery requested is narrowly tailored, limited in scope, and relevant

The fourth *Intel* factor is whether "the discovery requested is unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. Requests are unduly intrusive and burdensome where they are not narrowly tailored, request confidential information and appear to be a broad "fishing expedition" for irrelevant information. *In re Ex Parte Applicate of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1043 (N.D. Cal. 2016). The discovery sought here is narrowly tailored to seek only sufficient information to identify the Anonymous Individuals, and is not unduly intrusive or burdensome, because Applicants seek discovery of only PII such as names, addresses, telephone numbers, and e-mail addresses, or information that will lead to the discovery of PII such as access logs for limited periods of time, which information is stored by X in the ordinary course of its business. Nakajima Decl. ¶¶ 22-25; *see In re Frontier Co., Ltd.*, No. 19-mc-80184-LB, 2019 WL 3345348, at *5 (N.D. Cal. July 25, 2019) (granting a Section 1782 request to issue a subpoena for the name, address, email address, telephone number, and name and address on credit cards); *In re Med. Corp. Seishinkai*, 2021 WL 3514072, at *4-5 (authorizing similar discovery).

As for the access logs, discovery of the IP address and the corresponding port number and date

and time that the IP address was used (commonly known as a timestamp) is reasonable and necessary because IP addresses and port numbers are assigned by an internet service provider (the "ISP") when a user accesses the internet. Nakajima Decl. ¶ 25. Because of this, different people may be using the same IP address at different points-in-time. *Id*. Therefore, without both the IP address and the corresponding timestamp, a Japanese court will be unable to order an ISP to disclose PII of the tortfeasor, because it will be unclear which of the users of the subject IP address used the IP address at a specific point-in-time. *Id.* The IP address, port number and timestamp are all necessary for a Japanese court to order an ISP to disclose PII sufficient to identify the Anonymous Individuals, and for the ISP to pinpoint the relevant person using that information. *Id*.[1]

For the foregoing reasons, this factor also weighs in favor of authorizing discovery.

## V.

## CONCLUSION

Applicants have met all of the requirements of Section 1782, and all of the discretionary *Intel* factors weigh in favor of authorizing discovery. In light of the twin aims of Section 1782 to provide efficient assistance to foreign litigants and to encourage foreign countries by example, this Court should exercise its discretion to authorize limited discovery from X Corp., so that Applicants can identify the Anonymous Individuals and file a civil lawsuit in Japan.

Dated: June 10, 2024

Gamma Law, P.C.
Duy Thai
Kenneth J. MacArthur

By: /s/ Kenneth J. MacArthur
        Kenneth J. MacArthur
Attorneys for Applicants Aniplex Inc., and Toho Co., Ltd.

---

[1] Additionally, the subpoenas comply with the Stored Communications Act, 18 U.S.C. § 2701 et seq., because they do not seek the contents of communications from the accounts. *See, e.g., Optiver Australia Pty. Ltd. v. Tibra Trading Pty. Ltd*., No. C 12-80242, 2013 WL 256771 (N.D. Cal. Jan. 23, 2013) (discussing prohibitions of the Stored Communications Act).

# Exhibit A

Case 3:24-mc-80141-TLT   Document 1   Filed 06/10/24   Page 12 of 20

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Northern District of California

In re Ex Parte Application of Aniplex Inc., and Toho Co., Ltd.

*Applicants*

.

Civil Action No.

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: X Corp.

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment 1

| Place: By email to: kmacarthur@gammalaw.com; or at Gamma Law, P.C., attn: K. MacArthur, One Sansome Street, Suite 3500, San Francisco, California 94104 | Date and Time: |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

*CLERK OF COURT*

OR

_____         _____
*Signature of Clerk or Deputy Clerk*                                   *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Applicants
Aniplex Inc., and Toho Co., Ltd.                                             , who issues or requests this subpoena, are:
Gamma Law, P.C., Duy Thai (dthai@gammalaw.com), Kenneth J. MacArthur (kmacarthur@gammalaw.com),
One Sansome Street, Suite 3500, San Francisco, CA 94104     415.296.9927

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Case 3:24-mc-80141-TLT   Document 1   Filed 06/10/24   Page 13 of 20

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

# PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____
_____
on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____
_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# Attachment 1

To: X Corp.

Applicants Aniplex Inc. and Toho Co., Ltd. hereby request that X Corp. (hereinafter "you" or "your") produce to its attorney, Kenneth J. MacArthur, any and all of the DOCUMENTS described under the heading "II. REQUEST FOR PRODUCTION" below.

## I. DEFINITIONS

1. The word "DOCUMENT" or "DOCUMENTS" means "documents," "electronically stored information," or "tangible things," as those terms are used in Rules 34(a) and 45 of the Federal Rules of Civil Procedure. Where a DOCUMENT has been prepared in several copies, or where additional copies have been made that are not identical or are no longer identical by reason of subsequent notation, highlighting or other modification of any kind whatsoever including, but not limited to, notations on the back of pages thereto, each nonidentical copy shall be considered a separate DOCUMENT. A DOCUMENT that is "electronically stored information" shall be produced in portable document format (commonly known as "PDF") with Bates numbering and appropriate confidentiality designations, along with searchable metadata databases.

2. The word "ACCOUNT 1" means the X account with the username "@WERLeaks".

3. The word "ACCOUNT 2" means the X account with the username "@msthshra".

4. The word "ACCOUNT 3" means the X account with the username "@\IDuckyx".

5. The word "ACCOUNT 4" means the X account with the username "@Nakayasee".

6. The word "ACCOUNT 5" means the X account with the username "@knyesta".

7. The word "ACCOUNT 6" means the X account with the username "@SaaraAdam21".

8. The word "ACCOUNT 7" means the X account with the username "@Snowz7x".

9. The word "ACCOUNT 8" means the X account with the username "@seveninone71".

10. The word "ACCOUNT 9" means the X account with the username "@jobisky".

11. The word "ACCOUNT 10" means the X account with the username "@SinzsSzn2".

12. The word "ACCOUNT 11" means the X account with the username "@Root25257968".

13. The word "ACCOUNT 12" means the X account with the username "@mamutchiq2030".

14. "ALL" means "each, any and all."

## II. REQUEST FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1.** ALL DOCUMENTS showing the following information ever registered with ACCOUNT 1:

(i) ALL names, addresses, e-mail addresses (including email addresses used for recovery or other purposes), and telephone numbers;

(ii) ALL names, telephone numbers and addresses (including billing and shipping addresses, and postal codes) of ALL payment methods registered to ACCOUNT 1, including but not limited to credit cards (but not the credit card number, expiration date, or card validation code) and bank accounts, and the name of the company or financial institution associated with each such payment method.

**REQUEST FOR PRODUCTION NO. 2.** ALL DOCUMENTS showing the following information as of the date that ACCOUNT 1 was created, and for the three-month period immediately preceding June 10, 2024 and until the date that you respond to this request: ALL access log information (IP addresses, corresponding port numbers, corresponding dates and times, access type, and corresponding destination IP addresses) of ACCOUNT 1.

**REQUEST FOR PRODUCTION NO. 3.** ALL DOCUMENTS showing the following information ever registered with ACCOUNT 2:

(i) ALL names, addresses, e-mail addresses (including email addresses used for recovery or other purposes), and telephone numbers;

(ii) ALL names, telephone numbers and addresses (including billing and shipping addresses, and postal codes) of ALL payment methods registered to ACCOUNT 2, including but not limited to credit cards (but not the credit card number, expiration date, or card validation code) and bank accounts, and the name of the company or financial institution associated with each such payment method.

**REQUEST FOR PRODUCTION NO. 4.** ALL DOCUMENTS showing the following information as of the date that ACCOUNT 2 was created, and for the three-month period preceding June 10, 2024 and until the date that you respond to this request: ALL access log information (IP addresses, corresponding port numbers, corresponding dates and times, access type, and corresponding destination IP addresses) of ACCOUNT 2.

**REQUEST FOR PRODUCTION NO. 5.** ALL DOCUMENTS showing the following information ever registered with ACCOUNT 3:

(i) ALL names, addresses, e-mail addresses (including email addresses used for recovery or other purposes), and telephone numbers;

(ii) ALL names, telephone numbers and addresses (including billing and shipping addresses, and postal codes) of ALL payment methods registered to ACCOUNT 3, including but not limited to credit cards (but not the credit card number, expiration date, or card validation code) and bank accounts, and the name of the company or financial institution associated with each such payment method.

**REQUEST FOR PRODUCTION NO. 6.** ALL DOCUMENTS showing the following information as of the date that ACCOUNT 3 was created, and for the three-month period immediately preceding preceding June 10, 2024 and until the date that you respond to this request: ALL access log information (IP addresses, corresponding port numbers, corresponding dates and times, access type, and corresponding destination IP addresses) of ACCOUNT 3.

**REQUEST FOR PRODUCTION NO. 7.** ALL DOCUMENTS showing the following

information ever registered with ACCOUNT 4:

>(i) ALL names, addresses, e-mail addresses (including email addresses used for recovery or other purposes), and telephone numbers;

>(ii) ALL names, telephone numbers and addresses (including billing and shipping addresses, and postal codes) of ALL payment methods registered to ACCOUNT 4, including but not limited to credit cards (but not the credit card number, expiration date, or card validation code) and bank accounts, and the name of the company or financial institution associated with each such payment method.

**REQUEST FOR PRODUCTION NO. 8.** ALL DOCUMENTS showing the following information as of the date that ACCOUNT 4 was created, and for the three-month period immediately preceding June 10, 2024 and until the date that you respond to this request: ALL access log information (IP addresses, corresponding port numbers, corresponding dates and times, access type, and corresponding destination IP addresses) of ACCOUNT 4.

**REQUEST FOR PRODUCTION NO. 9.** ALL DOCUMENTS showing the following

information ever registered with ACCOUNT 5:

>(i) ALL names, addresses, e-mail addresses (including email addresses used for recovery or other purposes), and telephone numbers;

>(ii) ALL names, telephone numbers and addresses (including billing and shipping addresses, and postal codes) of ALL payment methods registered to ACCOUNT 5, including but not limited to credit cards (but not the credit card number, expiration date, or card validation code) and bank accounts, and the name of the company or financial institution associated with each such payment method.

**REQUEST FOR PRODUCTION NO. 10.** ALL DOCUMENTS showing the following information as of the date that ACCOUNT 5 was created, and for the three-month period immediately preceding preceding June 10, 2024 and until the date that you respond to this request: ALL access log information (IP addresses, corresponding port numbers, corresponding dates and times, access type, and corresponding destination IP addresses) of ACCOUNT 5.

**REQUEST FOR PRODUCTION NO. 11.** ALL DOCUMENTS showing the following

information ever registered with ACCOUNT 6:

>(i) ALL names, addresses, e-mail addresses (including email addresses used for recovery or other purposes), and telephone numbers;

(ii) ALL names, telephone numbers and addresses (including billing and shipping addresses, and postal codes) of ALL payment methods registered to ACCOUNT 6, including but not limited to credit cards (but not the credit card number, expiration date, or card validation code) and bank accounts, and the name of the company or financial institution associated with each such payment method.

**REQUEST FOR PRODUCTION NO. 12.**  ALL DOCUMENTS showing the following information as of the date that ACCOUNT 6 was created, and for the three-month period immediately preceding preceding June 10, 2024 and until the date that you respond to this request: ALL access log information (IP addresses, corresponding port numbers, corresponding dates and times, access type, and corresponding destination IP addresses) of ACCOUNT 6.

**REQUEST FOR PRODUCTION NO. 13.**  ALL DOCUMENTS showing the following

information ever registered with ACCOUNT 7:

(i) ALL names, addresses, e-mail addresses (including email addresses used for recovery or other purposes), and telephone numbers;

(ii) ALL names, telephone numbers and addresses (including billing and shipping addresses, and postal codes) of ALL payment methods registered to ACCOUNT 7, including but not limited to credit cards (but not the credit card number, expiration date, or card validation code) and bank accounts, and the name of the company or financial institution associated with each such payment method.

**REQUEST FOR PRODUCTION NO. 14.**  ALL DOCUMENTS showing the following information as of the date that ACCOUNT 7 was created, and for the three-month period immediately preceding preceding June 10, 2024 and until the date that you respond to this request: ALL access log information (IP addresses, corresponding port numbers, corresponding dates and times, access type, and corresponding destination IP addresses) of ACCOUNT 7.

**REQUEST FOR PRODUCTION NO. 15.**  ALL DOCUMENTS showing the following

information ever registered with ACCOUNT 8:

(i) ALL names, addresses, e-mail addresses (including email addresses used for recovery or other purposes), and telephone numbers;

(ii) ALL names, telephone numbers and addresses (including billing and shipping addresses, and postal codes) of ALL payment methods registered to ACCOUNT 8, including but not limited to credit cards (but not the credit card number, expiration date, or card validation code) and bank accounts, and the name of the company or financial institution associated with each such payment method.

**REQUEST FOR PRODUCTION NO. 16.**  ALL DOCUMENTS showing the following information as of the date that ACCOUNT 8 was created, and for the three-month period immediately preceding June 10, 2024 and until the date that you respond to this request: ALL access log information (IP addresses, corresponding port numbers, corresponding dates and times, access type, and corresponding destination IP addresses) of ACCOUNT 8.

**REQUEST FOR PRODUCTION NO. 17.**  ALL DOCUMENTS showing the following

information ever registered with ACCOUNT 9:

(i) ALL names, addresses, e-mail addresses (including email addresses used for recovery or other purposes), and telephone numbers;

(ii) ALL names, telephone numbers and addresses (including billing and shipping addresses, and postal codes) of ALL payment methods registered to ACCOUNT 9, including but not limited to credit cards (but not the credit card number, expiration date, or card validation code) and bank accounts, and the name of the company or financial institution associated with each such payment method.

**REQUEST FOR PRODUCTION NO. 18.** ALL DOCUMENTS showing the following information as of the date that ACCOUNT 9 was created, and for the three-month period immediately preceding June 10, 2024 and until the date that you respond to this request: ALL access log information (IP addresses, corresponding port numbers, corresponding dates and times, access type, and corresponding destination IP addresses) of ACCOUNT 9.

**REQUEST FOR PRODUCTION NO. 19.** ALL DOCUMENTS showing the following information ever registered with ACCOUNT 10:

(i) ALL names, addresses, e-mail addresses (including email addresses used for recovery or other purposes), and telephone numbers;

(ii) ALL names, telephone numbers and addresses (including billing and shipping addresses, and postal codes) of ALL payment methods registered to ACCOUNT 10, including but not limited to credit cards (but not the credit card number, expiration date, or card validation code) and bank accounts, and the name of the company or financial institution associated with each such payment method.

**REQUEST FOR PRODUCTION NO. 20.** ALL DOCUMENTS showing the following information as of the date that ACCOUNT 10 was created, and for the three-month period immediately preceding June 10, 2024 and until the date that you respond to this request: ALL access log information (IP addresses, corresponding port numbers, corresponding dates and times, access type, and corresponding destination IP addresses) of ACCOUNT 10.

**REQUEST FOR PRODUCTION NO. 21.** ALL DOCUMENTS showing the following information ever registered with ACCOUNT 11:

(i) ALL names, addresses, e-mail addresses (including email addresses used for recovery or other purposes), and telephone numbers;

(ii) ALL names, telephone numbers and addresses (including billing and shipping addresses, and postal codes) of ALL payment methods registered to ACCOUNT 11, including but not limited to credit cards (but not the credit card number, expiration date, or card validation code) and bank accounts, and the name of the company or financial institution associated with each such payment method.

**REQUEST FOR PRODUCTION NO. 22.** ALL DOCUMENTS showing the following information as of the date that ACCOUNT 11 was created, and for the three-month period immediately preceding June 10, 2024  and until the date that you respond to this request: ALL

access log information (IP addresses, corresponding port numbers, corresponding dates and times, access type, and corresponding destination IP addresses) of ACCOUNT 11.

**REQUEST FOR PRODUCTION NO. 23.**  ALL DOCUMENTS showing the following information ever registered with ACCOUNT 12

> (i) ALL names, addresses, e-mail addresses (including email addresses used for recovery or other purposes), and telephone numbers;

> (ii) ALL names, telephone numbers and addresses (including billing and shipping addresses, and postal codes) of ALL payment methods registered to ACCOUNT 12, including but not limited to credit cards (but not the credit card number, expiration date, or card validation code) and bank accounts, and the name of the company or financial institution associated with each such payment method.

**REQUEST FOR PRODUCTION NO. 24.**  ALL DOCUMENTS showing the following information as of the date that ACCOUNT 12 was created, and for the three-month period immediately preceding June 10, 2024 and until the date that you respond to this request: ALL access log information (IP addresses, corresponding port numbers, corresponding dates and times, access type, and corresponding destination IP addresses) of ACCOUNT 12.