Gamma Law, P.C.
Duy Thai, SBN 157345
Email: dthai@gammalaw.com
Kenneth J. MacArthur, SBN 175906
Email: kmacarthur@gammalaw.com
One Sansome Street, Suite 3500
San Francisco, California 94104
Tel.: 415.296.9927
Fax: 415.901.0512

Attorneys for Applicants
Aniplex Inc., and Toho Co., Ltd

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re Ex Parte* Application of<br><br>Aniplex Inc., a Japanese corporation, and Toho Co., Ltd., a Japanese corporation,<br><br>Applicants.<br><br>. | Case No.:<br><br>**DECLARATION OF HIROYUKI NAKAJIMA IN SUPPORT OF APPLICANTS'** ***EX PARTE*** **APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 AUTHORIZING DISCOVERY FOR USE IN FOREIGN PROCEEDINGS** |

I, Hiroyuku Nakajima, declare as follows:

1. I am a Japan qualified attorney (b*engoshi* in Japanese), registered to practice law in Japan, and I am an attorney at Tokyo Flex Law Office which is located at Yotsuya 1-20 Tamagawa Building 3F, Shinjyuku-ku, Tokyo Japan. In Japan, I represent applicants Aniplex Inc. ("Aniplex") and Toho Co., Ltd. ("Toho") (collectively, "Applicants"), both of which are Japanese corporations engaged in the business, amount other things of producing and releasing "anime" TV series (i.e., various animated, Japanese-language television series).

2. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

3. In preparing this declaration, I have reviewed the evidence that is being submitted concurrently herewith, and my opinion below is based upon those documents or facts that I have been made aware of.

4. I submit this declaration in support of the Ex Parte Application by Applicants for an Order Pursuant to 28 U.S.C. § 1782 Authorizing Discovery for Use in Foreign Proceedings (hereinafter "Application"). The Application is for an Order authorizing a subpoena to X Corp. (formerly known as Twitter) ("X") for information about the identity of the anonymous person(s) behind twelve accounts on X (the "Anonymous Individuals"). Those twelve X accounts were used by the Anonymous Individuals to post images on X from then-unreleased versions of episodes of Japanese-language, anime TV series, without Applicants' authorization, in violation of Japanese copyright law and of Applicants' rights under that law.

5. I was consulted by and advised Applicants about: (a) filing civil lawsuits in Japan against the Anonymous Individuals who made the subject X posts; and (b) discovering the true identity of the Anonymous Individuals in order to be able to file those civil lawsuits.

6. The concurrently filed declaration of Yuma Takahashi and Koji Higashi ("Takahashi Declaration" and "Higashi Declaration," respectively, and collectively the "Declarations") sets forth the details about the anime TV episodes, the infringing posts, and the facts showing that the images posted by the 12 X users in twitter posts on X contained images that had not been released to the public, and as to which the postings were therefore unauthorized, and violated Applicants' rights under Japanese copyright law.

7. The Declarations identifies the twelve infringing X accounts (the "X Accounts"):

| "@WERLeaks" | "@msthshra" |
| --- | --- |
| "@\IDuckyx" | "@Nakayasee" |
| "@knyesta" | "@SaaraAdam21" |
| "@Snowz7x" | "@seveninone71" |
| "@jobisky" | "@SinzsSzn2" |
| "@Root25257968" | "@mamutchiq2030" |

8. I am informed and believe that "X" (formerly known as Twitter)" is owned and operated by X Corp. Based upon Business Search results on the California

Declaration of Hiroyuki Nakajima

Secretary of State's website, the principal office of X Corp. is located at 1355 Market Street, Suite 900, San Francisco, CA 94103; attached as Exhibit 1 is a true and correct copy of a screenshot of the first page of those online Business Search results.

9. Applicants have informed me that they would each like to and intend to file civil lawsuits in Japan against the Anonymous Individuals, once the Anonymous Individuals are identified, seeking damages for copyright infringement pursuant to Article 709 of the Civil Code of Japan, injunctive relief pursuant to Article 112(1) of the Copyright Act of Japan, and damages and injunctive relief pursuant to Articles 3(1) and 4 of the Unfair Competition Prevention Act of Japan.

10. In that regard, Article 709 of the Civil Code (Compensation for Damages in Tort) provides: "A person that has intentionally or negligently infringed the rights or legally protected interests of another person is liable to compensate for damage resulting in consequence."

11. Article 112(1) of the Copyright Act of Japan (Right to Demand Injunction) provides: "The author, copyright owner, owner of print rights, performer, or owner of neighboring rights, may file a claim against a person who is infringing or who is likely to infringe the moral rights of the author, the copyright, the print rights, the moral rights of the performer, or the neighboring rights, for the cessation or prevention of such infringement."

12. Article 3(1) of the Unfair Competition Prevention Act provides: "A person whose business interests have been infringed or are likely to be infringed by unfair competition may seek an injunction suspending or preventing the infringement against the person that infringed or is likely to infringe such business interests."

Declaration of Hiroyuki Nakajima

13. Article 4 of the Unfair Competition Prevention Act provides: "A person who intentionally or negligently infringes on the business interests of another person by unfair competition shall be liable for damages resulting therefrom. However, this Article shall not apply to damages resulting from the use of a trade secret after the rights prescribed in Article 15 have extinguished pursuant to the said Article."

14. Based upon my experience as a lawyer qualified to practice law in Japan, the Applicants will be able to make out a prima facie civil case against each of the Anonymous Individual because the conduct described in the Declarations with regard to the posting of unreleased images on X violated Article 709 of the Civil Code, is a basis for injunctive relief under Article 112(1) of the Copyright Act, and is a basis for damages and injunctive relief under the Unfair Competition Prevention Act, and therefore, the civil lawsuits that will be filed upon discovering the true identity of the Anonymous Individuals will withstand a motion to dismiss in a civil court of Japan.

15. No statute of limitation or other limitation in time to commence an action will prevent the Applicants from filing civil lawsuits against the Anonymous Individuals.

16. However, in order to file a civil lawsuit in Japan, the true identity of a defendant is necessary, because Japanese law does not allow for lawsuits to be filed against anonymous persons. As such, the Applicants are unable to file the civil lawsuits because the true identity of the Anonymous Individuals are unknown.

17. The Applicants are therefore seeking personal identifying information (hereinafter "PII") for the Anonymous Individuals through the discovery sought by the Application in order to identify the true identity of the Anonymous Individuals to file the civil lawsuits against the Anonymous Individuals.

Declaration of Hiroyuki Nakajima

18. X is not, and will not be, a party or participant to the anticipated civil lawsuits in Japan described above, and I am informed and believe that the information or documents sought through discovery are held by it in the United States, and therefore, the information or documents sought through discovery are outside the reach of a court of Japan's jurisdiction.

19. Based upon my experience as a lawyer qualified to practice law in Japan, I am not aware of any restrictions imposed by or any policies under the laws of Japan limiting U.S. federal court judicial assistance for the purposes herein and in the Application.

20. Based upon my experience as a lawyer qualified to practice law in Japan, courts of Japan are receptive to assistance in discovery by U.S. federal courts, including for discovery of PII of individuals publishing anonymously online.

21. The Applicants are not attempting to circumvent any foreign proof-gathering restrictions or other policies of Japan or the United States.

22. Applicants seek the PII (names, addresses, email addresses, telephone numbers, and payment information), but not credit card numbers, expiration dates or validation codes) ever registered with the email accounts. The is necessary, because based upon my experience as a lawyer qualified to practice law in Japan, a Anonymous Individual may have not planned to engage in unlawful activity against an Applicant until a time close to when the Anonymous Individuals engaged in the events at issue, and as such, it is quite possible that the Anonymous Individuals may have used their true identity until a time close to when the Anonymous Individual engaged in the unlawful

Declaration of Hiroyuki Nakajima

activity. Additionally, recent PII is also relevant and necessary, because the Anonymous Individuals may have not changed PII that is not displayed publicly.

23. Based upon my experience, where an online account is used for a legitimate purpose, PII is only changed occasionally, and because this information is stored by X in the ordinary course of its business, the burden placed upon each of them in disclosing this information is minimal.

24. The discovery of PII requested is not unduly intrusive, because the request is narrowly tailored to discover the true identity of the Anonymous Individuals, and is not seeking other information.

25. Additionally, Applicants seek to obtain recent access logs for the accounts of the Anonymous Individuals. I am informed and believe that the following is the reason why access log (dates, times, IP addresses, and port numbers) of the Email Accounts (hereinafter the "Recent Access Log") is necessary, in addition to the PII, to identify the Anonymous Individual:

    a. In many cases, an Online Service Provider does not have accurate PII that is sufficient to identify the true identity of the tortfeasor because the Online Service Provider does not always require a user to record his or her true name, address, e-mail address, telephone number, or any other PII.

    b. Where the tortfeasor created the email account to engage in unlawful activities, because the PII disclosure is voluntary and by the tortfeasor, most of the information obtained about the email account may be fictitious.

c. As described below, an alternate path to identifying anonymous users is with a Remote Access Log.

d. When the tortfeasor, the Anonymous Individual in this case, accesses the internet to access their email, the tortfeasor's electronic device (e.g., their laptop or smartphone) initially communicates with an Internet Service Provider ("ISP"). ISPs are the entities that provide internet access services to users. Examples of ISPs in the United States are AT&T and Verizon.

e. Subsequently, the ISP communicates with the company providing online services (hereinafter the "Online Service Provider"), and the tortfeasor is thereby able to access their email account.

f. In each communication, information such as an IP address, a port number, and a time stamp (the time when the specific communication occurred), may have been recorded, which records are commonly known as an "access log."

g. The ISP assigns an IP address and a port number to the user when providing the user with internet access. An ISP is able to identify the user using the information in an access log because it has a record of to whom it assigned a certain IP address and port number at a certain time.

h. ISPs may assign a different IP address and port number every time that a user accesses the internet, and therefore, the time and date that a

8

Declaration of Hiroyuki Nakajima

person was accessing the internet using the specific IP address and port number is necessary.

i. In layman terms, an IP address is the street address of the user, while the port number is the room number.

j. Initially, a victim of an unlawful act on the internet, such as the Applicants, does not know the ISP of the user/tortfeasor, and therefore, the victim needs for the Online Service Provider to disclose the access log in its possession.

k. By obtaining the IP address from the Online Service Provider, the victim is then able to identify the ISP used by the tortfeasor, because the IP addresses owned by an ISP are publicly available information.

l. The victim can then provide the access log from the Online Service Provider (the IP address, the port number, and timestamp) to the ISP, and request identifying information such as the name and address of the tortfeasor from the ISP tortfeasor in order to file a civil lawsuit against the tortfeasor.

m. In order for an Applicant to identify the Anonymous Individual through an ISP, both the IP address and a corresponding port number and timestamp is necessary.

n. Without a corresponding timestamp, a court of Japan will not order an ISP in Japan to disclose information, and an ISP in Japan will be unable to pin-point the tortfeasor that was using the IP address at a certain point-in-time.

Declaration of Hiroyuki Nakajima

o. Additionally, where the port number is not disclosed, certain ISPs will be unable to pin-point the tortfeasor that was using the IP address even with a timestamp.

p. The port number is only used in conjunction with an IP address to identify the ISP of the tortfeasor and is used by an ISP to pin-point who was using a certain IP address and a certain port number on a specific date and time, and therefore, a port number does not intrude upon a person's privacy.

q. The timestamp only shows when a person accessed their online account using a specific IP address and port number, does not disclose what the person was doing using their online account, and therefore, discovery of a timestamp only minimally intrudes upon a person's privacy, and the evidentiary value of a timestamp in allowing the victim to identify the tortfeasor far outweighs any privacy issues.

r. The destination IP address is the IP address of a website. Because of the enormous volume of traffic that certain websites receive, some websites are maintained on several IP addresses. Some ISPs in Japan state that they cannot pinpoint the tortfeasor without the destination IP address (in addition to the IP address, port number, and timestamp), and therefore, if the Online Service Provider maintains the destination IP address, this may be critical in identifying the tortfeasor.

s. Since the destination IP address is simply the IP address of a website such as gmail.com, msn.com or paypal.com, disclosure of this

Declaration of Hiroyuki Nakajima

information by the Online Service Provider does not intrude upon a person's privacy.

t.  If an Online Service Provider keeps a complete access log indefinitely, a victim can more readily identify the tortfeasor. However, in practice, sufficient access log is not available because (i) the Online Service Provider does not record a complete access log for all communications, (ii) the Online Service Provider only keeps the access log for a short period of time (usually for three to six months); and (iii) a tortfeasor can use special anonymization computer programs to prevent the victim from identifying the tortfeasor through the use of the access log.

u.  Because the access logs are often deleted by Online Service Providers after several months, a recent access log is critical.

v.  While a tortfeasor may be accessing the internet and the Online Service Provider using an anonymization computer program at times, they may have the program off at other times.

w.  For the foregoing reasons, a recent access log for a reasonable period of time is necessary because (i) the Online Service Provider may have not recorded a complete access log if discovery is limited to a short period of time, (ii) older access logs have likely been deleted, and (iii) there is a possibility that the tortfeasor may have had his or her anonymization computer program turned off.

x.  If discovery is allowed only for a short period of time, and/or only for older access logs, it would be less likely that the victim will be able to obtain information sufficient to identify the true identity of the tortfeasor.

y.  Therefore, for the foregoing reasons, it is reasonable to allow discovery of recent access log, and to not limit discovery to the period at or about the time that the unlawful statement was published.

26. Based upon the foregoing, the information and documents sought are highly relevant and crucial to the Applicants' anticipated civil lawsuits in Japan and is narrowly tailored and limited to the discovery of information necessary to identify the true identity of the Anonymous Individuals against whom the civil lawsuits will be filed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on June 5, 2024.

/Hiroyuki Nakajima

Hiroyuki Nakajima

# Exhibit 1

