Gamma Law, P.C.
Duy Thai, SBN 157345
Email: dthai@gammalaw.com
Kenneth J. MacArthur, SBN 175906
Email: kmacarthur@gammalaw.com
One Sansome Street, Suite 3500
San Francisco, California 94104
Tel.: 415.296.9927
Fax: 415.901.0512

Attorneys for Applicants Aniplex, Inc.,
and Toho Co., Ltd.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re *Ex Parte* Application of<br><br>Aniplex Inc., a Japanese corporation, and Toho Co., Ltd., a Japanese corporation,<br><br>Applicants. | Case No.: 3:24-mc-80141-TLT<br><br>**CASE MANAGEMENT STATEMENT**<br><br>**Hon. Trina L. Thompson**<br><br>**Date: August 22, 2024**<br>**Time: 2:00 p.m.**<br>**Videoconference Only** |

**CASE MANAGEMENT STATEMENT**

Applicants Aniplex Inc. and Toho Co., Ltd. ("Applicants"), through their counsel of record, submit this Case Management Statement in accordance with the November 30, 2023 Standing Order for All Judges of the Northern District of California.

**REQUEST FOR CONTINUANCE OF CASE MANAGEMENT CONFERENCE**

Applicants request that this case management conference be continued until 90 days after the Court rules on Applicants' pending Ex Parte Application for an Order Pursuant to 28 USC Section 1782 Authorizing Discovery for Use in Foreign Proceedings (the "Ex Parte Application"), currently set by Docket No. 9 for a Motion Hearing on October 1, 2024.

As more fully described in the Ex Parte Application:

- Applicants seek Court authorization to conduct limited discovery by serving subpoenas upon X Corp. (fka Twitter) ("X"), which is located in this district, to discover personal identifying information ("PII") that can be used to identify the true identities of the twelve anonymous individuals ("Anonymous Individuals") who made posts on X in which leaked images from unreleased episodes (or unreleased versions of episodes) of anime TV series were posted without authorization from the applicable Applicant, in violation of: (1) Article 709 of the Civil Code of Japan (Compensation for Damage in Tort); (2) Article 112(1) of the Copyright Act of Japan; (3) Article 3(1) of the Unfair Competition Prevention Act; and (4) Article 4 of the Unfair Competition Prevention Act.
- Once the identity of the Anonymous Individuals is known, Applicants intend to file a civil lawsuit against them in Japan, seeking injunctive relief and damages under Japanese law.

**NORTHERN DISTRICT REQUIREMENTS FOR CASE MANAGEMENT STATEMENT**

1. **Jurisdiction and Service: The basis for the court's subject matter jurisdiction over plaintiff's claims and defendant's counterclaims, whether any issues exist regarding personal jurisdiction or venue, whether any parties remain to be served, and, if any parties remain to be served, a proposed deadline for service.**

This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1782, which permits authorization of discovery where three requirements are satisfied: (1) the person from whom the discovery is sought "resides or is found" in the district of the court where the application is made; (2) the discovery is "for use in a proceeding in a foreign or international tribunal . . . ."; and (3) the application is made by a foreign or international tribunal or "any interested person." *Khrapunov v. Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019); 28 U.S.C. § 1782(a).

This court has personal jurisdiction because the principal office of X is located in San Francisco.

In the event that – as requested by Applicants -- this court grants the Ex Parte Application, Applicants will serve X with the proposed subpoena, which Applicants would intend to do within a reasonable time after said grant. Applicants would intend to provide X with a production date approximately 30 days after service, to permit time for X to raise any objection to the subpoena and to inform the Anonymous Individuals of the subpoena, and for those Anonymous Individuals to raise any objections to the subpoena.

**2. Facts: A brief chronology of the facts and a statement of the principal factual issues in dispute.**

Applicants are Japanese corporations engaged in the business, among others, of producing and releasing "anime" TV series (i.e., various animated, Japanese-language television series). Declaration of Hiroyuki Nakajima ("Nakajima Decl.") ¶ 1;[1] Declaration of Yuma Takahashi ("Takahashi Decl.") ¶ 4; Declaration of Koji Higashi ("Higashi Decl.") ¶ 4. The intended initial audiences for these anime TV series are television viewers in Japan, where such anime TV series are popular. Takahashi Decl. ¶ 4; Higashi Decl. ¶ 4.

X. Corp. owns and operates "X" (formerly known as Twitter), and its principal office is located in San Francisco. Nakajima Decl. ¶ 8 & Ex. 1 thereto.

Applicants have each been the victim of copyright infringement under Japanese law as to their respective anime TV series, via posts made by anonymous twitter users on X in which leaked images

---

[1] References herein to declarations are to the declarations previously filed in support of the Ex Parte application.

from unreleased episodes (or unreleased versions of episodes) of the anime TV series were posted without authorization. Takahashi Decl. ¶ 6; Higashi Decl. ¶ 6.

Applicants were able to identify each of the subject infringements in one of three ways:

a. First, and most simply, where an image from an episode is posted on X by a twitter user prior to the episode's release date, the posting is unauthorized and an infringement.

b. Second, sometimes an episode is first provided to broadcast TV stations and streaming services with deliberately erroneous information in the episode's credits. Then, prior to the release date and time, another version of the episode, with correct credits, is provided to the broadcast TV stations and streaming services to be used for the release. In such circumstances, the version with the deliberately erroneous credits was never authorized for release, and any image posted on X of those erroneous credits is unauthorized and an infringement.

c. Third, some of the infringement was identified by the appearance of "watermarks" in a posted image of an episode. A "watermark" in an anime image typically appears as a circle in a set of known locations within the image. A watermark typically is barely perceptible, or not perceptible, in an image, but its appearance in the image can be confirmed by brightening the image. Where infringement was detected here by a watermark, that was possible because: (i) the version of the episodes provided to broadcast TV stations did not have watermarks; (ii) the version of the episodes provided to streaming services did have watermarks; and (iii) the infringing posts were posted before the streaming release time and date. In other words. the posted images came from a streaming version of the episode, not the broadcast version, at a time where the streaming version was not authorized for release, and the post of the image on X was unauthorized and an infringement.

Takahashi Decl. ¶ 8; Higashi Decl. ¶ 8.

Each of the subject posts, along with the basis for knowing each was an infringement, is detailed in the Declarations of Yuma Takahashi and Koji Higashi. Takahashi Decl. ¶¶ 9-22 and Exhs. 1-25; Higashi Decl. ¶¶ 8-17 and Exhs. 1-8. Takahashi Decl. ¶¶ 9-22 and Exhs. 4, 5, 7, 9, 11, 13, 14,

16, 18, 20, 23 & 25; Higashi Decl. ¶¶ 8-17 and Exhs. 4, 5 & 8.

3. **Legal Issues: A brief statement, without extended legal argument, of the disputed points of law, including reference to specific statutes and decisions.**

    At this point, there are no disputed points of law.

    Applications made under 28 U.S.C. § 1782 are typically considered on an *ex parte* basis, because "parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it." *IPCom GmbH & Co, KG v. Apple, Inc.*, 61 F. Supp. 3d 919, 922 (N.D. Cal. 2014). Consequently, orders granting Section 1782 applications typically only provide that discovery is "authorized," and thus the opposing party may still raise objections and exercise its due process rights by challenging the discovery after it is issued via a motion to quash, which mitigates concerns regarding any unfairness of granting the application *ex parte*. *In re Ex Parte Application Varian Med. Sys. Int'l AG*, No. 16-mc-80048-MEJ, 2016 WL 1161568, at *2 (N.D. Cal. Mar. 24, 2016).

4. **Motions: All prior and pending motions, their current status, and any anticipated motions.**

    The only prior/pending motion is the pending Ex Parte Application, set for hearing on October 1, 2024. Dckt. No. 9.

5. **Amendment of Pleadings: The extent to which parties, claims, or defenses are expected to be added or dismissed and a proposed deadline for amending the pleadings.**

    Subject to the outcome of a ruling by the court on the Ex Parte Application, Applicants do not expect to amend their Ex Parte Application.

6. **Evidence Preservation: A brief report certifying that the parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and confirming that the parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action. See ESI Guidelines 2.01 and 2.02, and Checklist for ESI Meet and Confer.**

    Not applicable, at present.

7. **Disclosures: Whether there has been full and timely compliance with the initial disclosure requirements of Fed. R. Civ. P. 26, and a description of the disclosures made.**

    Not applicable, at present.

Case Management Statement
Page 5 of 8

16, 18, 20, 23 & 25; Higashi Decl. ¶¶ 8-17 and Exhs. 4, 5 & 8.

3. **Legal Issues: A brief statement, without extended legal argument, of the disputed points of law, including reference to specific statutes and decisions.**

At this point, there are no disputed points of law.

Applications made under 28 U.S.C. § 1782 are typically considered on an *ex parte* basis, because "parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it." *IPCom GmbH & Co, KG v. Apple, Inc.*, 61 F. Supp. 3d 919, 922 (N.D. Cal. 2014). Consequently, orders granting Section 1782 applications typically only provide that discovery is "authorized," and thus the opposing party may still raise objections and exercise its due process rights by challenging the discovery after it is issued via a motion to quash, which mitigates concerns regarding any unfairness of granting the application *ex parte*. *In re Ex Parte Application Varian Med. Sys. Int'l AG*, No. 16-mc-80048-MEJ, 2016 WL 1161568, at *2 (N.D. Cal. Mar. 24, 2016).

4. **Motions: All prior and pending motions, their current status, and any anticipated motions.**

The only prior/pending motion is the pending Ex Parte Application, set for hearing on October 1, 2024. Dckt. No. 9.

5. **Amendment of Pleadings: The extent to which parties, claims, or defenses are expected to be added or dismissed and a proposed deadline for amending the pleadings.**

Subject to the outcome of a ruling by the court on the Ex Parte Application, Applicants do not expect to amend their Ex Parte Application.

6. **Evidence Preservation: A brief report certifying that the parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and confirming that the parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action. See ESI Guidelines 2.01 and 2.02, and Checklist for ESI Meet and Confer.**

Not applicable, at present.

7. **Disclosures: Whether there has been full and timely compliance with the initial disclosure requirements of Fed. R. Civ. P. 26, and a description of the disclosures made.**

Not applicable, at present.

Case Management Statement
Page 5 of 8

8. **Discovery: Discovery taken to date, if any, the scope of anticipated discovery, any proposed limitations or modifications of the discovery rules, a brief report on whether the parties have considered entering into a stipulated e-discovery order, a proposed discovery plan pursuant to Fed. R. Civ. P. 26(f), and any identified discovery disputes.**

No discovery has been taken, as yet. The anticipated discovery is the subpoena proposed as part of the Ex Parte Application.

9. **Class Actions: If a class action, a proposal for how and when the class will be certified, and whether all attorneys of record for the parties have reviewed the Procedural Guidance for Class Action Settlements.**

Not applicable.

10. **Related Cases: Any related cases or proceedings pending before another judge of this court, or before another court or administrative body.**

There are no related cases or proceedings pending.

11. **Relief: All relief sought through complaint or counterclaim, including the amount of any damages sought and a description of the bases on which damages are calculated. In addition, any party from whom damages are sought must describe the bases on which it contends damages should be calculated if liability is established.**

Applicants seek authorization to conduct the limited discovery identified in the Ex Parte Application. Damages would be sought in Japan from the Anonymous Individuals.

12. **Settlement and ADR: Prospects for settlement, ADR efforts to date, and specific ADR plan for the case, including compliance with ADR L.R. 3-5 and a description of key discovery or motions necessary to position the parties to negotiate a resolution.**

Not applicable, at present.

13. **Other References: Whether the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.**

No.

14. **Narrowing of Issues: Issues that can be narrowed by agreement or by motion, suggestions to expedite the presentation of evidence at trial (e.g., through summaries or stipulated facts), and any request to bifurcate issues, claims, or defenses. The parties shall jointly identify (in bold or highlight) one to three issues which are the most consequential to the case and discuss how resolution of these issues may be expedited.**

The consequential issue at this point is the pending Ex Parte Application. Resolution of

that application will expedite moving this matter forward. Otherwise not applicable, at present.

**15. Scheduling: Proposed dates for designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial.**

Not applicable, at present.

**16. Trial: Whether the case will be tried to a jury or to the court and the expected length of the trial.**

Not applicable; any trial would be in an action in Japan.

**17. Disclosure of Non-party Interested Entities or Persons: Whether each party has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-15. In addition, each party must restate in the case management statement the contents of its certification by identifying any persons, firms, partnerships, corporations (including parent corporations) or other entities known by the party to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding. In any proposed class, collective, or representative action, the required disclosure includes any person or entity that is funding the prosecution of any claim or counterclaim.**

Applicants have filed their Certification of Interested Entities of Persons (Dkt. No. 7), stating the following:

> Pursuant to Civil L.R. 3-15, the undersigned certifies that the following listed persons, associations of persons, firms, partnerships, corporations (including, but not limited to, parent corporations), or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:
> (1) Applicant Aniplex Inc.
> (2) The corporate parent of Aniplex Inc., Sony Music Entertainment (Japan) Inc.
> (3) The corporate parent of Sony Music Entertainment (Japan), Sony Group Corporation.
> (4) Applicant Toho Co., Ltd.

**18. Professional Conduct: Whether all attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.**

Applicants' counsel of record has reviewed the Guidelines for Professional Conduct for the Northern District of California.

**19. Such other matters as may facilitate the just, speedy and inexpensive disposition of this matter.**

None, at present.

Dated: August 19, 2024

Gamma Law, P.C.
Duy Thai
Kenneth J. MacArthur

By: /s/ Kenneth J. MacArthur
      Kenneth J. MacArthur
Attorneys for Applicants Aniplex Inc., and Toho Co., Ltd.